K23VCORA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 CR 438 (VEC)

5   EDWIN CORTORREAL,

6              Defendant.               ARRAIGNMENT

7   ------------------------------x

8                                        New York, N.Y.
                                         February 3, 2020
9                                        11:57 a.m.

10

    Before:
11
                   HON. VALERIE E. CAPRONI,
12
                                      District Judge
13

14                      APPEARANCES

15
    GEOFFREY S. BERMAN,
16       United States Attorney for the
         Southern District of New York
17  HAGAN C. SCOTTEN
         Assistant United States Attorney
18
    JEAN BARRETT
19       Attorney for Defendant

20
    ALSO PRESENT:  FRANCISCO OLIVERO, Interpreter (Spanish)
21

22

23

24

25

K23VCORA

1              (Case called)

2              MR. SCOTTEN:  Good morning, your Honor.

3              Hagan Scotten, for the government.

4              THE COURT:  Good morning.

5              MS. BARRETT:  Good morning, your Honor.

6              Jean Barrett, on behalf of Mr. Cortorreal.

7              THE COURT:  Good morning --

8              MS. BARRETT:  -- who is standing to my right.

9              THE COURT:  Good morning, Mr. Cortorreal.

10             THE DEFENDANT:  (In English) Good morning, your Honor.

11             THE COURT:  Please be seated, everybody.

12             All right.  Just to go through some of the --

13             MS. BARRETT:  Your Honor?  The interpreter has asked

14   me to put on the record that Mr. Cortorreal has requested

15   interpreting only of his words to the Court.  He feels he can

16   understand what's going on.  It's his ability to convey his

17   thoughts, whatever, to the Court that's the issue.

18             THE COURT:  Okay.

19             MS. BARRETT:  So he has asked not to use the headsets;

20   and that the interpreter will only interpret what he says to

21   your Honor.

22             THE COURT:  Okay.  All right.

23             Mr. Cortorreal, let me just confirm, you think that

24   you understand English well enough to proceed without the

25   interpreter interpreting to you?

K23VCORA

1          THE DEFENDANT:  (In English) Correct.

2          THE COURT:  Okay.

3          All right.  Let me just take sure.

4          Mr. Scotten, the indictment has now been unsealed; is

5      that correct?

6          MR. SCOTTEN:  It was unsealed about an hour ago, your

7      Honor, yes.

8          THE COURT:  Okay.  And I was handed a financial

9      affidavit for Mr. Cortorreal.

10          Ms. Caliendo, could you please swear in

11      Mr. Cortorreal.

12          (Defendant sworn)

13          THE DEPUTY CLERK:  Please state your full name for the

14      record and spell your last name.

15          THE DEFENDANT:  Edwin Cortorreal.

16          THE COURT:  How do you spell your last name?

17          THE DEFENDANT:  (In English) C-O-R-R-E-A-L.

18          THE COURT:  Okay.  Thanks.

19          Mr. Cortorreal, you filled out a financial affidavit

20      today.  You told me in this affidavit that you are not

21      currently employed, that you're not married, and that you don't

22      have -- have not had any income at all in the past 12 months.

23          Is that true?

24          THE DEFENDANT:  (In English) Correct.

25          THE COURT:  And also that you don't own any property

K23VCORA

1    of any type; is that correct?

2            THE DEFENDANT:  (In English) Correct.

3            THE COURT:  All right.  Ms. Barrett, you're going to

4    be appointed under the CJA Act.

5            MS. BARRETT:  Thank you, your Honor.

6            THE COURT:  Okay.  I know from the fact that I was

7    told that we were late so that the indictment could be read to

8    Mr. Cortorreal, that the indictment has been read to him.

9            Is that correct, Mr. Cortorreal?  Did someone read you

10    the indictment?

11            THE DEFENDANT:  (In English) Correct.

12            THE COURT:  They read it to you in Spanish?

13            THE DEFENDANT:  (In English) Yes.

14            THE COURT:  You want me to read it again out loud?

15            THE DEFENDANT:  (In English) No.

16            THE COURT:  All right.

17            You're charged with a racketeering conspiracy, murder

18    in aid of racketeering, using a firearm that resulted in death,

19    and using a firearm in connection with a crime of violence

20    other than the murder.

21            Do you understand what you're being charged with?

22            THE DEFENDANT:  (In English) Yes, your Honor.

23            THE COURT:  How do you plead, guilty or not guilty?

24            THE DEFENDANT:  (In English) Not guilty.

25            THE COURT:  Mr. Scotten, do I also understand that the

K23VCORA

1    death penalty is no longer on the table because that was

2    forgone in order to get him extradited?

3              MR. SCOTTEN:  That's correct.  So essentially, your

4    Honor, that whole process was done once he was indicted, while

5    the indictment was still under seal, and the government will

6    not be seeking the death penalty in this case.

7              THE COURT:  Okay.  Can you describe for me and for

8    Mr. Cortorreal what the case against him is, and also what the

9    discovery looks like in this case.

10             MR. SCOTTEN:  Yes, your Honor.

11             So this is a case arising from Mr. Cortorreal's

12   association with a group known as the Hot Boys.

13             The indictment charges beginning in 2006; I think

14   Mr. Cortorreal's association is earlier than that.  At the time

15   Mr. Cortorreal was most actively involved with them, they were

16   burglars and robbers.  They conducted both commercial

17   burglaries and burglaries of homes.

18             THE COURT:  Are these the guys that pushed open the

19   doors with the hydraulic pump?

20             MR. SCOTTEN:  Yes.  So let me do this for your Honor.

21   I was doing the whole thing from anew, since Mr. Cortorreal;

22   but, to be clear, this is the same case.  He's the sealed

23   defendant.

24             THE COURT:  I knew he was the sealed defendant.  But I

25   just want to make sure that I had the right gang case.

K23VCORA

1           MR. SCOTTEN:  Yes.  Correct.  That is exactly right.

2           The focus of Mr. Cortorreal's activity was in the

3      period of 2005 and 2007, most significantly in 2006.  He and

4      four other members of the enterprise decided to rob Kelly Diaz,

5      who was a wholesale marijuana supplier, a robbery they

6      committed with that pump your Honor was just referring to.

7           In the course of that robbery, after Mr. Diaz was

8      subdued, and indeed after the robbery was largely complete,

9      Mr. Cortorreal personally shot and killed Diaz.  That's the

10     same murder your Honor has dealt with with respect to certain

11     other defendants who are aiders and abettors.

12           THE COURT:  I recall.

13           MR. SCOTTEN:  Just to bring Mr. Cortorreal, sort of,

14     to the present, in 2007, he was caught in a DEA sting, wherein

15     he planned to rob what he believed to be a truck containing

16     many kilograms of heroin with other members of the Hot Boys.

17     It was not, in fact, that.  He and Edwin Araujo, your Honor may

18     remember from the original case, successfully fled the scene at

19     high speed.

20           Although Araujo was arrested shortly thereafter, Mr.

21     Cortorreal was at large for something like a year.  And I

22     believe he was eventually apprehended in Pennsylvania in 2008.

23     He eventually pled guilty to a narcotics charge, since the

24     intended object of the robbery was narcotics.  And he was

25     sentenced to six years in prison.

K23VCORA

1              However, in 2011 he was given early parole, not

2       really, as part of being extradited.  New York said, Why should

3       we keep him here since he's going to be extradited to the DR,

4       to the Dominican Republic, where he's remained until now.

5              So those are some of the facts behind the case.

6              In terms of discovery -- and I just begin to discuss

7       this with Ms. Barrett -- as your Honor may recall, there's a

8       huge amount of discovery because it was a sprawling enterprise.

9       And Ms. Barrett has quite reasonably asked for all of it.  At

10      the same time I will try to indicate to her which parts concern

11      acts that her defendant did not particularly participate in,

12      but she does want to review all of it, and that's reasonable.

13             So the discovery of most concern to Mr. Cortorreal

14      includes video of the defendant coming and going to -- or going

15      to and coming from the apartment where the murder occurred.

16             DNA, which will require further processing -- we are

17      aware from COTUS that DNA found on a cell phone battery at the

18      scene of the murder matches the defendant's; but we will

19      request a warrant and actually get a swab so that we can firm

20      that.  So that discovery will be forthcoming as OCME conducts

21      its analysis.

22             There are phone records relative both to that

23      particular murder and the conspiracy more generally.  There is

24      also prior convictions.  We expect that we would use, for

25      example, the 2007 sting to prove the enterprise and

1    Mr. Cortorreal's participation in it.

2             Then there is a whole lot of other discovery for a

3    whole lot of robberies and burglaries, particularly burglaries

4    of pharmacies for which the objective, sort of, scientific

5    discovery is bulky, most of which occurred while Mr. Cortorreal

6    had been extradited.  So we'll make that available to defense

7    counsel.  It is further proof of the enterprise.  It may also,

8    in fact, be *Giglio* for some witnesses who end up testifying

9    against Mr. Cortorreal, but it is less central to

10   Mr. Cortorreal.

11            THE COURT:  Okay.  And am I remembering correctly that

12   there was a discovery coordinator in this case?

13            MR. SCOTTEN:  There was.  Ms. Greenwood is the

14   coordinator.  And she -- I think she believes she can continue

15   under the Court's order, so long as the Court clarifies today

16   that you intend that order to continue to apply.  This is the

17   same docket, so I think it normally would.

18            THE COURT:  Okay.  I intend it to continue.

19            MR. SCOTTEN:  Thank you, your Honor.

20            THE COURT:  Does she need to give you -- does the

21   defense need to give you a hard drive?

22            MR. SCOTTEN:  So because there's a discovery

23   coordinator, actually, no.  I think Ms. Greenwood will provide

24   hard drives to the defense.

25            THE COURT:  Perfect.

K23VCORA

1        MR. SCOTTEN:  Probably we will end up having to talk

2   about getting some hard drives into jail, but we'll do that a

3   little further along.

4        THE COURT:  Okay.  But let's do that quickly, because

5   it's going to need to happen, and that tends to slow things

6   down.

7        MR. SCOTTEN:  I'll prepare what I think is -- we just

8   couldn't put all the discovery in the jail.  So I usually like

9   to know what defense counsel wants her client to have; but I

10   have an idea, so we'll start putting that together.

11        THE COURT:  Perfect.

12        Okay.  Ms. Barrett.

13        MS. BARRETT:  Yes, your Honor.

14        With regard to the discovery, in view of the fact that

15   Mr. Cortorreal has difficulty in reading English, I'm going to

16   have to translate it one way or another, translate anything

17   that's in English one way or another.

18        Obviously if there are tape-recordings and people are

19   communicating in Spanish, that doesn't have to be translated

20   for them, but it would have to be translated for me if the

21   government has not already done that.  So that certainly would

22   be a concern in terms of timetable.

23        And obviously this is a very serious offense.

24   Mr. Scotten and I had a discussion with regard to the taking of

25   a DNA sample.  I requested a copy of the affidavit in advance

K23VCORA

1   of the execution of the search warrant.  He has declined to

2   provide it.  This is not an ordinary search warrant in terms

3   of -- and I don't anticipate, based on his representations

4   today, that there would be any difficulty in it; but I also

5   don't see that the government would be prejudiced by allowing

6   me to review it prior to advising my client to participate in

7   the procedure.  If the procedure is limited to the taking of a

8   swab, and there is already a COTUS identification with regard

9   to Mr. Cortorreal, it doesn't seem to be that controversial a

10  question.  But given the fact that this isn't a search of one

11  person, as opposed to a search of a home or a car, I would

12  request the opportunity to view the affidavit so that I might

13  consider whether or not to move to quash -- to quash the search

14  warrant.

15          MR. SCOTTEN:  To be clear --

16          THE COURT:  Mr. Scotten.

17          MR. SCOTTEN:  There is no search warrant.

18          THE COURT:  I didn't think there was.

19          MR. SCOTTEN:  We'll need to do an order to get the

20  sample, because as your Honor knows, we're not going to proceed

21  just on a COTUS hit.  I am aware of no -- I've never seen an

22  affidavit given to defense counsel before execution of a

23  warrant.  I suspect this is an opportunity for her to get

24  discovery and try to learn something about the government's

25  case.

K23VCORA

1           But if we think we can do it with no prejudice, either

2      in this case or in the future, we'll consider it.  If we don't

3      do it, she can move to quash without it.

4           THE COURT:  Move to quash after the sample is taken.

5           MR. SCOTTEN:  Yes, your Honor.

6           THE COURT:  Okay.

7           MS. BARRETT:  Your Honor, I believe that an in-person

8      search -- and I did -- I have litigated this issue in another

9      district.  So I believe that an in-person search is considered

10     very different from the search of property; and that I should

11     have an opportunity to move to quash prior to the execution of

12     the warrant, where my client is required to provide -- to allow

13     somebody to swab his mouth.

14          THE COURT:  There may be law that says that.  I'm not

15     aware of it.  He doesn't have a warrant yet; so all of this is

16     going to -- he needs to get a warrant.  He'll let you know when

17     he has the warrant; he'll give you a copy of the warrant.  If

18     at that point if he's still saying he's not going to show you

19     the affidavit, and you think you've got law that justifies a

20     motion to quash, you know how to make a motion.

21          MS. BARRETT:  I do.

22          THE COURT:  I know how to rule on a motion.

23          MS. BARRETT:  I know.

24          THE COURT:  We can deal with it at that point.

25          MS. BARRETT:  Yes, your Honor.  Thank you.

K23VCORA

1          THE COURT:  I was just going to ask if you would waive

2     all of that and just agree to let him give the sample.

3          MR. SCOTTEN:  Well, that's where we started, your

4     Honor.  The answer is no.

5          THE COURT:  Okay.  That's fine.

6          All right.  So all of this is a long-winded way of

7     saying, Ms. Barrett, I'm fully prepared to give you a nice

8     chunk of time before I bring you back for a status conference

9     where we will set a motions calendar and a trial date.

10          MS. BARRETT:  Understood.

11          THE COURT:  Given what you know about the case, how

12     long would you like?

13          MS. BARRETT:  Your Honor, I just read the indictment,

14     and I have no idea how much discovery there is.

15          THE COURT:  Well, you've heard what Mr. Scotten said.

16          There's videos, there's lab reports, there's police

17     reports from lots -- as I recall, lots of burglaries.  There

18     were lots of pharmacy burglaries, weren't there?

19          MR. SCOTTEN:  That's correct.

20          Your Honor will remember, and this may be helpful to

21     Ms. Barrett, that the government came into this case, sort of,

22     backwards, based on some really amazing investigation by the

23     detectives sitting back there.  They proved the pharmacy

24     burglaries essentially solely by looking at 200 sets of cell

25     phone towers.  So there's just a vast amount of cell phone

K23VCORA

1    evidence that they needed just to identify the pharmacy

2    burglaries, for committing these burglaries from roughly 2011

3    to 2013, which is to say --

4              THE COURT:  After his time.

5              MR. SCOTTEN:  -- while Mr. Cortorreal was either in

6    prison or in the Dominican Republic.  But we will disclose

7    that.  Some of the same characters who were involved in this

8    robbery were there.

9              THE COURT:  And also that case was tried in front of

10   Judge Carter.

11             MR. SCOTTEN:  That case was largely pled and partly

12   tried.

13             THE COURT:  And Judge Pauley, right?  There's a piece

14   of it that's in front of Pauley?

15             MR. SCOTTEN:  Sure.

16             So let me give the full narration --

17             MS. BARRETT:  I'll sit down.

18             MR. SCOTTEN:  I'll try to be somewhat brief.

19             So the pharmacy burglaries case was indicted in 2013,

20   and was before Judge Pauley.  Almost everyone pled guilty in

21   that case, except one defendant, who went to -- I just said

22   Pauley.  Judge Carter.

23             THE COURT:  Right.

24             MR. SCOTTEN:  Judge Carter.  That case took a long

25   time to progress because we actually indicted multiple rounds

K23VCORA

1    of defendants as we gained more proof.  And that progressed

2    from 2013 to roughly 2017.  In 2017, one of the very last

3    defendants in that case went to trial before Judge Carter and

4    was acquitted.  Everyone else had pled guilty before then.

5            That same year is when this case was indicted before

6    your Honor.  But before that we indicted a subset of the

7    participants in the pharmacy burglaries conspiracy for a very

8    specific home invasion robbery that occurred in 2012.  That

9    case was indicted before Judge Pauley.  One defendant in that

10   case went to trial and was convicted.

11           That case may be of interest to Ms. Barrett and

12   Mr. Cortorreal, because actually some of the same participants

13   as in the murder here -- or at least the relevant players --

14   were relevant in that home invasion.

15           Then we indicted everything as a racketeering case

16   before your Honor.  Each of these cases has some different

17   defendants and a common core of defendants.

18           And that is where we are today, your Honor.

19           THE COURT:  Okay.

20           MS. BARRETT:  I won't bother the Court.  I assume that

21   I'll be provided with the docket numbers by the government, so

22   that will be helpful.

23           THE COURT:  Okay.

24           So how long do you want is the question.

25           MS. BARRETT:  Your Honor, I would like at least 90

K23VCORA

1    days.

2            THE COURT:  Okay.  I was going to give you four

3    months.

4            MS. BARRETT:  That's good.  I'll take longer.

5            THE COURT:  Is that better?

6            MS. BARRETT:  Yes.

7            THE COURT:  All right.

8            So we'll do a status conference in four months; that

9    will be June the 2nd at 2:30.  At that time we'll set a motions

10   calendar and set a trial date.

11           I'm excluding time between now and June the 2nd on the

12   grounds of the complexity of the case; the defense needs time

13   to review all of this stuff, which is -- there's a lot of it,

14   in order to make an intelligent decision about her defense, the

15   defendant's defense; and also about what motions are going to

16   be made.  Because of that, I find that the defendant's interest

17   in time to do so outweighs the public's interest in a speedy

18   trial.

19           MS. BARRETT:  No objection, your Honor.

20           THE COURT:  Anything further from the government?

21           MR. SCOTTEN:  Yes.  If I might, your Honor, I need to

22   make a brief record on some things that would normally happen

23   in magistrate court.

24           THE COURT:  Okay.

25           MR. SCOTTEN:  The defendant passed into U.S. custody

K23VCORA

1    in the Dominican Republic on Friday, January 31st.  He arrived

2    in the United States at approximately 5:30 p.m., also on

3    January 31st.

4              At that time he spoke by phone with Marissa Cabrera of

5    the Federal Defenders.  The Federal Defenders typically handle

6    Saturday presentments, if they are to occur.  CJA counsel do

7    not have to come in on a Saturday.

8              THE COURT:  Right.

9              MR. SCOTTEN:  Speaking with Ms. Cabrera,

10   Mr. Cortorreal waived his right to speedy presentment,

11   presentment within 24 hours; so there was no appearance on

12   Saturday.  And today, by the defendant's consent, is his first

13   appearance before a judicial officer.

14             THE COURT:  Okay.  That also means that there's been

15   no detention hearing.

16             MR. SCOTTEN:  That is correct, your Honor.  So if he

17   wishes to make an application for bail, we are seeking

18   detention.

19             THE COURT:  Okay.  The government is seeking

20   detention.  This is a presumption case.

21             Are you seeking bail?

22             MS. BARRETT:  Not at this time, your Honor.

23             THE COURT:  Okay.  If you change your mind and decide

24   to seek bail, you know how to do that as well.

25             MS. BARRETT:  I do.

K23VCORA

1          THE COURT:  So I'm ordering the defendant detained

2     pending trial at this point.

3          Anything else?

4          MR. SCOTTEN:  No.  Thank you, your Honor.

5          THE COURT:  Anything, Ms. Barrett?

6          MS. BARRETT:  No, your Honor.

7          THE COURT:  All right.  Thank you, all.

8          MS. BARRETT:  Thank you.

9                         *    *    *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25