USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,

    -against-

EDWIN CORTORREAL,

                       Defendant.
------------------------------------------------------------ X

17-CR-438 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

On April 26, 2023, following a jury trial, Edwin Cortorreal was convicted of (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (2) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; and (3) the use of a firearm resulting in death in connection with a conspiracy to distribute marijuana. *See* Verdict Form, Dkt. 817. Sentencing is scheduled for September 20, 2023. *See* Order, Dkt. 816. Mr. Cortorreal has moved to limit his sentence to a maximum of 30 years based on an alleged agreement between the United States Government and the Government of the Dominican Republic to secure Mr. Cortorreal's extradition (the "Motion"). *See* Def. Mem. at 7–8, Dkt. 838.[1] The Government opposes the Motion. Gov. Opp., Dkt. 843. For the reasons discussed below, Defendant's motion is DENIED.

## BACKGROUND

On July 12, 2017, the Grand Jury returned a five-count Superseding Indictment charging Mr. Cortorreal with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Two); participating in a conspiracy to distribute more than a kilogram of heroin, more than five kilograms

---

[1] In connection with the Motion, Mr. Cortorreal requests a subpoena to obtain the names of individuals who communicated with Dominican authorities on behalf of the United States. *See* Def. Letter, Dkt. 839.

of cocaine, and more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count Three); the use of a firearm resulting in death in connection with the crimes charged in Counts One and Two, in violation of 18 U.S.C. §§ 924(j)(1) and 2 (Count Four); and the use of firearms in connection with the crimes charged in Counts One and Three, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and 2 (Count Five). *See* Indictment, Dkt. 537.

Between April and December 2018, the U.S. Attorney's Office ("USAO") communicated with the Department of Justice's Office of International Affairs ("OIA") regarding a request to the Dominican Republic for Mr. Cortorreal's extradition. Gov. Opp. at 1. On March 14, 2019, the United States Embassy in the Dominican Republic presented the extradition request to the Dominican equivalent of the United States Department of State ("MIREX"); the extradition package included an express assurance that the United States would not seek the death penalty. *Id.* at 1–2; *see also* Ex. A, Warner Decl., ¶¶ 8, 21, Dkt. 843-1.

On September 30, 2019, Dominican authorities arrested Mr. Cortorreal pursuant to an arrest warrant issued by the Dominican Supreme Court. Gov. Opp. at 2. On November 22, 2019, the President of the Dominican Republic granted the U.S. Government's request to extradite Mr. Cortorreal and issued the "*Decreto*," an order that directed Dominican authorities to execute the extradition request.[2] *See id.*; *see also* Ex. B, Supp. Warner Decl., ¶ 4, Dkt. 838-2. On or around December 19, 2019, the U.S. Embassy in the Dominican Republic received the *Decreto* along with a diplomatic note in which the Dominican Government requested the United States to "indicate its acceptance" that, if convicted, Mr. Cortorreal's "penalty" would not exceed 30 years. Gov. Opp. at 2–3. Although the United States did not respond to that diplomatic note, the Dominican

---

2     "A *Decreto* memorializes the decision of the President of the [Dominican Republic] to grant extradition." Ex. B, Supp. Warner Decl., ¶ 4, Dkt. 843-2.

authorities surrendered Mr. Cortorreal to United States law enforcement officers and, on January 31, 2020, Mr. Cortorreal was brought to the United States. *Id.* at 3; *see also* Def. Mem. at 7.

Mr. Cortorreal argues that the Court should "save the United States from a breach of faith" and enforce the Government's supposed agreement with the Dominican Republic not to impose a prison sentence of more than 30 years. *See* Def. Mem. at 6. According to Mr. Cortorreal, he agreed to waive extradition based on the assurances given by a Dominican judge when he was arrested that he would not face more than 30 years, a condition that the United States acquiesced to upon taking Mr. Cortorreal into custody from Dominican authorities. *See* Ex. G, Cortorreal Decl. ¶¶ 4–5, Dkt. 838-7; *see also* Ex. C, Cortorreal Waiver, Dkt. 838-3. The Government argues, however, that, even if the United States agreed to limit Mr. Cortorreal's maximum sentence, Mr. Cortorreal does not have standing to enforce that agreement. Gov. Opp. at 4–5. Further, even if Mr. Cortorreal had standing, the Government argues that it made no such agreement with the Dominican Republic. *See id.* at 10–11; Ex. C, Heinemann Decl. ¶¶ 6–7, Dkt. 843-3. Because the Court finds Mr. Cortorreal lacks standing, his Motion is denied.

## DISCUSSION

An extradited defendant can only be tried for an offense "described in th[e] treaty [under which he is extradited], and for the offen[s]e with which he is charged in the proceedings for his extradition." *United States v. Barinas*, 865 F.3d 99, 104 (2d Cir. 2017) (quoting *United States v. Rauscher*, 119 U.S. 407, 430 (1886)). The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on the prosecution by the surrendering country." *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (quoting *United States v. Baez*, 349 F.3d

90, 92 (2d Cir. 2003)).[3] "A country that consents to extradite a person has the right to enforce such limitations." *Barinas*, 865 F.3d at 104 (citing *United States v. Garavito-Garcia*, 827 F.3d 242, 246–47 & n.33 (2d Cir. 2016)).

Because an international treaty is a compact between independent nations, it establishes the rights and obligations of the States involved; although an individual may benefit because of a treaty's existence, a treaty generally does not establish rights between states and individuals. *Mora v. New York*, 524 F.3d 183, 194–95201 (2d Cir. 2008) (citing *Head Money Cases*, 112 U.S. 580, 598 (1884) and *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 67 (2d Cir. 1975)); *see also Medellín v. Texas*, 552 U.S. 491, 506 n.3 (2008) ("Even when treaties are self-executing in the sense that they create federal law, the background presumption is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.'"). Accordingly, the Second Circuit has held that a criminal defendant lacks standing to enforce an international agreement, regardless of whether he "objects based on the rule of specialty or based on the interpretation of an extradition treaty or Diplomatic Note," unless the surrendering state "first makes an official protest." *Suarez*, 791 F.3d at 367. Because "[t]he provisions in question are designed to protect the sovereignty of states, . . . it is plainly the offended states which must in the first instance determine whether a violation of sovereignty occurred[] or requires redress." *Gengler*, 510 F.2d at 67.

Mr. Cortorreal argues that, notwithstanding clear Second Circuit precedent, he has standing to enforce the terms of the *Decreto* because its sentencing-cap provision was "written specifically for him" and was "issued explicitly — and solely — for [Mr. Cortorreal's] benefit." Def. Mem. at

---

[3] "Although the rule of specialty is typically applied in cases where the defendant is tried for a crime not enumerated in the applicable extradition treaty or agreement, it also 'has application in the sentencing context.'" *Suarez*, 791 F.3d at 366 (quoting *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007)).

4

8. Because Mr. Cortorreal relied on that provision and "not on general language in a treaty between nations" when waiving extradition, Mr. Cortorreal argues that the *Decreto* is a different creature than the treaties or diplomatic notes that the Second Circuit has held criminal defendants lack standing to enforce. *See id.* The Court disagrees.

In connection with the defendant's extradition in *United States v. Suarez*, the United States, in a diplomatic note, "promised" the Government of Colombia that "a sentence of life imprisonment[would] not be sought or imposed." 791 F.3d at 365. At sentencing, the district court imposed a term of imprisonment of 648 months, the functional equivalent of a life sentence. *Id.* On appeal, Suarez sought to challenge his sentence based on the assurances provided by the United States in the diplomatic note; the Second Circuit found that Suarez lacked standing to enforce that commitment. *Id.* at 367. The Second Circuit's reasoning in *Suarez* applies with equal force here: the *Decreto* is just like any other "extradition document," and "[a]ny individual right" that Mr. Cortorreal may have under the sentencing-cap provision is "only derivative through the state." *Id.* (quoting *Gengler*, 510 F.2d at 67). Thus, even when the United States makes a commitment to a foreign state in a diplomatic note to abide by a limit on punishment, it is only the "country that consents to extradite a person [that] has the right to enforce such limitations." *Barinas*, 865 F.3d at 104; *see also Garavito-Garcia*, 827 F.3d at 246 ("[A]bsent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law as an issue."). To state the obvious, if Suarez lacked standing when the United

States actually made promises to the extraditing country, then Cortorreal, as to whom the United States made no promises, certainly lacks standing.[4]

In short, this Court is bound by Second Circuit precedent: even if it is true that Mr. Cortorreal only waived extradition because he was assured that he would not face a term of imprisonment in excess of 30 years, and even if the conduct of the United States could be viewed as acquiescence to the sentencing-cap condition, Mr. Cortorreal lacks standing to enforce it absent protest or objection by the Dominican Republic.[5]

The Court further denies Mr. Cortorreal's request to issue a subpoena for the names of individuals who communicated with Dominican authorities in connection with Mr. Cortorreal's extradition. Although Mr. Cortorreal seeks to establish a record of the facts surrounding his extradition, Def. Letter at 1–2, there are no discoverable (or non-discoverable) communications between the United States and the Dominican Republic that will change the facts that (1) the Dominican Republic has not stepped forward to enforce the sentencing limitation contained in the *Decreto* and (2) Mr. Cortorreal individually lacks standing to enforce any such limitation on his sentence. Accordingly, Mr. Cortorreal's request for permission to issue subpoenas is denied.

---

[4]     Comparing the purported agreement vis-à-vis the maximum prison term with the agreement vis-à-vis the death penalty is revealing as to whether either country believed there was an actual agreement as to the former. When the United States intends to make a commitment to the extraditing country, it knows how to do it. By the same token, when the Dominican Republic wants to insist on a particular condition, it knows how to do that as well. Here, the Dominican Republic only conditioned extradition on the United States' agreement not to seek the death penalty; it did not condition release of its citizen on a commitment by the United States with regard to the maximum sentence, and the United States never made any commitment on that score.

[5]     Mr. Cortorreal argues that by accepting his surrender from Dominican authorities, the United States acquiesced to the Dominican Republic's condition that Mr. Cortorreal's sentencing exposure be capped at 30 years, particularly because the sentencing condition was imposed *before* transferring Mr. Cortorreal to the custody of the United States. Def. Mem. at 6, 10 (citing *Cuevas*, 496 F.3d at 262–64). Because the Court finds that Mr. Cortorreal lacks standing to enforce the sentencing condition, regardless of the chronology of events, it does not reach the issue of whether the United States acquiesced to and is bound by the terms of the *Decreto*.

## CONCLUSION

For the foregoing reasons, Mr. Cortorreal's motion is DENIED. The Clerk of Court is respectfully directed to terminate the open motions at docket entries 838 and 839.

The parties are reminded that sentencing will take place on **September 20, 2023, at 2:30 p.m.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007.

**SO ORDERED.**

Date:  July 31, 2023
       New York, New York

_____
VALERIE CAPRONI
United States District Judge